UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) ) | 20-CR-10102 (WGY) |
| VITALII ANTONENKO,<br>  a/k/a "Sabe,"<br>  a/k/a "Sabeseller" | ) ) ) ) ) | |
| Defendant | ) | |

## SENTENCING MEMORANDUM OF THE UNITED STATES

The Court's difficult task in pronouncing a just sentence in this matter requires to distinguish between the Vitalii Antonenko the government arrested and detained in March 2019 and Vitalii Antonenko who will stand before the Court on December 10, 2024.

Between at least as early as 2013 and March 2019, Antonenko committed serious criminal offenses. Known online as "Sabe", he was responsible for network intrusions that cost victims millions of dollars. (PSR ¶ 10). In connection with these intrusions, Antonenko and co-conspirators stole millions of pieces of payment card data and personally identifiable information. (PSR ¶¶ 11, 13). He sold this information—the kind of data that fuels fraud schemes and significant losses to banks and other financial institutions—on underground markets in exchange for digital currency. (PSR ¶ 14). Antonenko exchanged that digital currency with a co-conspirator for cash—paying a 10 percent premium to convert and conceal his criminal proceeds. (PSR ¶ 14). These are offenses that would ordinarily warrant a significant sentence that reflected their seriousness and afforded deterrence to both Antonenko and others who traffic in payment card data and other forms of personally identifiable information. The Presentence Investigation Report's recommendations reflect these concerns by

1

accurately calculating an advisory Guidelines Sentencing Range, at Criminal History Category II, of between 360 months and life imprisonment.[1]

Since his arrest and detention in March 2019, however, Antonenko's mental health has deteriorated significantly. What began as behavior that could have been confused for malingering—a refusal to meet with counsel, to attend court proceedings, to cooperate with basic interview questions, or to receive family visitors—became the psychiatric diagnosis described below. With the consent of the parties, the Court sent Antonenko for three separate evaluations at Bureau of Prisons ("BOP") facilities (Docket Nos. 31, 44, 52). It later determined that he was not then competent to stand trial, and sent Antonenko for restoration pursuant to 18 U.S.C. § 4241(d). (Docket No. 112). Throughout this process, the Court has intervened to ensure that Antonenko attended its proceedings (*e.g.*, Docket Nos. 82, 86, 87), and to require that he engage in self-care so that he did not present a danger to himself or to other inmates (*e.g.*, Docket No. 103). BOP ultimately and sought and received authorization to medicate Antonenko involuntarily. (PSR ¶ 68). That forced and now continuing treatment appears to have mitigated, at least in part, many of Antonenko's symptoms. (PSR ¶ 69). He is nevertheless not the defendant that the government arrested at JFK Airport five years ago.

Further incarceration of this defendant, under these circumstances, is inappropriate. While his crimes were serious, his illness is debilitating. Antonenko is no longer a danger to re-offend, and the approximately 5 years he has served, under the combined burdens of the

---

[1] 28 of Antonenko's 41 offense levels come from the PSR's use of Application Note 3(F)(i) to USSG § 2B1.1, which assigns $500 of Guidelines loss under USSG § 2B1.1 to each of the more than 1 million access devices the defendant transferred, possessed, or used in furtherance of his offenses. The government has not established actual losses approaching that amount.

pandemic, a schizophrenic break, repeated transfers for evaluation, treatment, restoration, and forced medication, could not be confused for unwarranted leniency.

The parties' plea agreement under Fed. R. Crim. P. 11(c)(1)(C) calls for a sentence of 80 months, to be followed by 36 months of supervised release that include mental health testing and treatment under the direction of the United States Probation Office. The agreement is that the he first 12 of those months should be served at a residential reentry center, or until such time as a release plan is approved by the United States Probation Office. The Court should order the payment of a $200 special assessment and restitution of $1,823,864—the loss Antonenko and his coconspirators inflicted on the primary corporate victim in this matter. The Court should also order forfeiture, which will be the subject of a separate motion contemplated by the plea agreement.

The government's calculations indicate that Antonenko, with credit for time served and related credits, will have slightly overserved an 80-month sentence as of the date the Court pronounces it. The parties accordingly jointly modify their recommendation to a sentence of time served plus 10 days—a period that will permit the Probation Office to arrange for a suitable placement for Antonenko in the New York City area, where his mother lives and where he lived until the time of his offense.

Respectfully submitted,

JOSHUA S. LEVY
United States Attorney

By: /s/*Seth B. Kosto*
Seth B. Kosto
Assistant United States Attorney
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210

December 9, 2024

CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2024, I provided a copy of the foregoing to the attorneys for the defendant through the Court's Electronic Case Filing system.

/s/*Seth B. Kosto*
Seth B. Kosto
Assistant United States Attorney

December 9, 2024